UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD KOUBEK,

                              Plaintiff,         10-CV-4488 (SJF)(WDW)

-against-

THE COUNTY OF NASSAU, NASSAU COUNTY
DEPARTMENT OF SOCIAL SERVICES, NASSAU
COUNTY DEPARTMENT OF SOCIAL SERVICES
INCOME SUPPORTS COMMITTEE OF THE
ADVISORY COMMITTEE, KAREN GARBER (in
her official and individual capacity),
COMMISSIONER JOHN IMHOF, Commissioner
of the Nassau County Department of Social Services
(in his official and individual capacity), and
NICHOLAS A. ESPOSITO (in his official and
individual capacity),

                              Defendants.
------------------------------------------------------------X

FEUERSTEIN, J.

On October 1, 2010, plaintiff Richard Koubek ("plaintiff" or "Koubek") commenced this action against defendants the County of Nassau, Nassau County Department of Social Services, Nassau County Department of Social Services Income Supports Committee of the Advisory Committee, Karen Garber ("Garber"), in her official and individual capacities, Nicholas A. Esposito ("Esposito"), in his official and individual capacities, and Commissioner John Imhof, Commissioner of the Nassau County Department of Social Services ("Commissioner Imhof" or the "Commissioner"), in his official and individual capacities (collectively, "defendants"). [Docket Entry No. 1]. The complaint alleges, <u>inter alia</u>, that defendants violated the New York State Open Meetings Law, as well as plaintiff's First and Fourteenth Amendment rights. <u>Id.</u> at ¶

-1-

1.

Before the Court is defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). See Docket Entry No. 15. For the reasons that follow, defendants' motion is granted.

I. Background[1]

    A. The Nassau County Department of Social Services ("NCDSS") Advisory Council and the Income Supports Committee

18 N.Y.C.R.R. § 341.1 provides as follows:

> (a) The social services district shall establish an advisory council in accordance with the requirements of this Part and department guidelines.
>
> (b) The commissioner of the social services district shall appoint the members of the advisory council.
>
> (c) The advisory council shall consist of a minimum of 20 members, subject to such exceptions as the State Commissioner of Social Services may in his discretion permit, and shall be composed of the following classes of persons:
>
> > (1) recipients of public assistance (including SSI and food stamps), medical assistance and services – at least 25 percent;
> >
> > (2) providers of social services, medical services and domiciliary care (other than employees of the State or local departments of social services); and
> >
> > (3) members of the general public (including but not limited to representatives of professional social work associations, schools of social work, labor

---

[1] "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, unless the allegations are supported by mere conclusory statements." Hayden v. Paterson, 594 F.3d 150, 157 n. 4 (2d Cir. 2010) (internal quotation marks and citations omitted).

> organizations, public interest groups, client
> advocates, community organizations and the
> business and financial community).
>
> (d) The advisory council shall be involved, *in an advisory capacity only,* in policy development, program planning and program evaluation carried on by the social services district with respect to public assistance, medical assistance and services.

18 N.Y.C.R.R. § 341.1 (Emphasis added).

Pursuant to this provision, Commissioner Imhof, as Commissioner of the Nassau County Department of Social Services, established the NCDSS Advisory Council. By the express language of 18 N.Y.C.R.R. § 341.1, members of the NCDSS Advisory Council serve "in an advisory capacity *only.*" 18 N.Y.C.R.R. § 341.1(d) (emphasis added). These members are appointed by and serve at the will of the local social services districts. See id. at § 341.1(b); Complaint ("Compl.") [Docket Entry No. 1] at ¶ 22. Members of the NCDSS Advisory Council serve for one (1) year terms, commencing on October 1 of the year of appointment. Docket Entry No. 6-2 ("Bylaws") at III(B).

The NCDSS Advisory Council's Bylaws provide for the creation of several "standing committees," including an Income Supports Committee "composed of individuals and representatives of community agencies and organizations concerned with employment and consumer issues."[2] Bylaws at V(A)(2).[3]

---

[2] The Court notes that the complaint conflates the NCDSS Advisory Council, created pursuant to 18 N.Y.C.R.R. § 341.1, with the Advisory Council's Committees, which are pursuant to the Advisory Council's Bylaws. See, e.g., Compl. at ¶ 22.

[3] The Bylaws, attached to defendants' answer as Exhibit A, provide, in relevant part:

BY-LAWS FOR TITLE XX ADVISORY COUNCIL

ARTICLE I - NAME

The name of this Council shall be the Advisory Council to the Nassau County Department

of Social Services.

ARTICLE II - PURPOSE

The purpose of the Council shall be to act in an advisory capacity to the Commissioner of Social Services in regard to public assistance, medical assistance and services. The Council will:

- recommend priorities within the total program and budget or specific programs;
- recommend program and administrative policy;
- recommend the continuation or modification of programs;
- plan, participate in and evaluate full Advisory Council meetings;
- identify community concerns for the Department;
- help to interpret the Department's objectives and activities for the community;
- assist the Commissioner in communicating issues of concern to legislators;
- assist the Department in publicizing available services.

ARTICLE III - MEMBERSHIP

\* \* \*

B. . . . Members shall be appointed [by the Commissioner] for one (1) year terms, beginning on October 1st of the year of appointment.

C. Every member of a Committee shall be a member of the full Advisory Council. . . .

\* \* \*

ARTICLE V - COMMITTEES

A. The Standing Committees shall be open to appointed committee members only and consist of the following:

1. An Executive Committee which shall be composed of the officers - Chair, Vice Chair and Secretary - and the Chairpersons of all Standing Committees and any other Council members who may be deemed necessary to the operation of the Committee. An officer of the Executive Committee may also serve as a Committee Chair. Officers of the Executive Committee shall be appointed by the Commissioner for an annual term beginning October 1steach year. . . .

2. An Income Supports Committee composed of individuals and representatives of community agencies and organizations concerned with employment and consumer issues. . . .

\* \* \*

ARTICLE VI - FULL ADVISORY COUNCIL MEETINGS

The complaint asserts the following three (3) causes of action: (1) violations of plaintiff's rights pursuant to the First and Fourteenth Amendments of the U.S. Constitution; (2) violations of the New York Open Meetings Law; and (3) violations of Article I, Sections 8 and 9, of the New York State Constitution. Id. at ¶¶ 74-110. Plaintiff seeks a declaratory judgment, injunctive relief, and attorneys' fees. Id. at ¶ 111.

B. The Complaint

Plaintiff is a sixty-eight (68) year old male who, at all times relevant to this action, was employed by Catholic Charities in Nassau County. Compl. at ¶¶ 12, 17. According to the complaint, plaintiff is an "active member of the community," id. at ¶ 13, who had been appointed as a member of the NCDSS Advisory Council. Id. at ¶ 18. In connection with that appointment, plaintiff also served as a member of the NCDSS Advisory Council's Income Supports Committee (the "Income Supports Committee"). See id. at ¶¶ 3, 18. As a member of the NCDSS Advisory Council, plaintiff's term expired on September 30, 2007, and he was not reappointed to another term. According to the Bylaws, "[e]very member of a Committee shall be a member of the full Advisory Council," id. at III (C), and "[t]he Standing Committees shall be open to appointed committee members only . . . ," id. at V(A).

Plaintiff alleges that, in July 2007, Commissioner Imhof "removed" him from both the

---

A. Full Advisory Council meetings shall be held at least two times a year, one of which will be to review the Nassau County Department of Social Services Child and Family Services Plan.

\* \* \*

E. All Full Advisory Council meetings shall be open to the public, but voting shall be restricted to Council members only. Discussion from the public shall be at the discretion of the Council and as directed by the Chairperson.

NCDSS Advisory Council and the Income Supports Committee because plaintiff had voiced "procedural and policy related differences" with the Commissioner. Id. at ¶¶ 18, 41.[4] Plaintiff claims that, after his term on the NCDSS Advisory Council expired, defendants prohibited him from attending meetings of the Income Supports Committee and from entering the Nassau County Department of Social Services building in Uniondale, New York. Id. at ¶¶ 3-6. On or about October 23, 2007, Garber, an NCDSS employee, sent plaintiff an e-mail explaining that plaintiff could not attend the Income Supports Committee meetings because "only members appointed by the Commissioner may attend committee meetings." Id. at ¶ 43. Plaintiff, however, has always been permitted to attend the NCDSS Advisory Council's annual meetings. See Compl. at ¶ 42.

On or about February 12, 2009, plaintiff sent a letter to Commissioner Imhof, attaching an advisory legal opinion from Robert Freeman, Executive Director of the State of New York Committee on Open Government. Id. at ¶¶ 48-49; Docket Entry No. 9-2 at Ex. B. In the opinion, Freeman concluded that "a local advisory council . . . constitutes a 'public body' required to comply with the Open Meetings Law." Id. On or about April 8, 2009, Esposito, a Nassau County Deputy County Attorney, responded in a letter stating that the County disagreed with this conclusion, and that plaintiff would continue to be barred from meetings of the Income Supports Committee. See id. at ¶ 50; Docket Entry No. 9-2 at Ex. C.

Plaintiff does not allege that he was excluded from attending meetings of the NCDSS

---

[4] Plaintiff claims he was "removed as a member" in July 2007. Compl. at ¶ 41. However, the Court assumes that plaintiff was *notified* in July 2007 that his membership would not be renewed for another year, not that he was removed in the middle of his appointed term. According to meeting minutes submitted by plaintiff, plaintiff participated in the Income Supports Committee's September 26, 2007 meeting, at which time he informed the committee that he was not being reappointed to the NCDSS Advisory Council. [Docket Entry No. 9-2 at Ex. D, p. 2]. See In re Livent, Inc. Noteholders Sec. Litig., 151 F.Supp.2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely . . . .").

Advisory Council, even after his term expired, and does not dispute that NCDSS Advisory Council meetings are open to the public. Bylaws at VI(E) ("[a]ll Full Advisory Council meetings shall be open to the public"); see also Declaration of Pablo A. Fernandez ("Fernandez Dec.") [Docket Entry No. 16-2] at Ex. C (Garber: "You are certainly invited to attend our Full Advisory Council Meetings which are open to the public."); Compl. at ¶ 42 (acknowledging that he has been permitted to attend the NCDSS Advisory Council's annual meetings).[5] Rather, plaintiff alleges that he was excluded from meetings of the Income Supports Committee, which, according to the Advisory Council Bylaws, are "open to appointed committee members only." Bylaws at V(A); see also Fernandez Dec. Ex. C (Garber: committee meetings open only to "Advisory Council members appointed by the Commissioner."). Accordingly, the only issue presented is whether plaintiff was improperly excluded from meetings of the Income Supports Committee. See Plaintiff's Brief in Opposition [Docket Entry No. 20] ("Pl. Opp.") at 5-6.

II. Analysis

A. Standard of Review

In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

---

[5] Although the Bylaws specifically require the NCDSS Advisory Council meetings to be open to the public, it is not clear that the Open Meetings Law requires them to be. This question, however, is not before the Court, and the Court expresses no opinion on the issue.

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." Matson, 631 F.3d at 63 (internal quotation marks and citation omitted).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are

'integral' to the complaint." Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)).

B.  Section 1983

42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

"The statute itself is not a source of substantive rights but 'merely provides a method for vindicating federal rights elsewhere conferred.'" Fowlkes v. Rodriguez, 584 F.Supp.2d 561, 572 (E.D.N.Y. 2008) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). "Thus, in order to state a cognizable claim under § 1983, plaintiff must not only allege that a person was acting under color of state law but also that he or she engaged in conduct that deprived him of rights secured by the Constitution or laws of the United States." Id. (citing Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

C.  New York State Open Meetings Law

Section 103(a) of the New York Public Officers Law states: "Every meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section ninety-five of this article." "In enacting the Open Meetings Law, the Legislature sought to ensure that 'public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy." Mattter of Perez v. City Univ. of N.Y., 5

N.Y.3d 522, 528, 840 N.E.2d 572, 806 N.Y.S.2d 460 (2005) (quoting Public Officers Law § 100).

Section 102(2) of the Public Officers Law defines a "public body" as "any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, *performing a governmental function* for the state or for an agency or department thereof . . . ." (Emphasis added). "[N]ot every entity whose power is derived from state law is deemed to be performing a governmental function." Perez, 5 N.Y.3d at 528. To determine whether an entity is "performing a governmental function" for purposes of the Open Meetings Law, the Court "undertake[s] an analysis that centers on the authority under which the entity was created, the power distribution or sharing model under which it exists, the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies." Id. (internal quotation marks and citation omitted).

Committees that are "advisory in nature, [and that do] not perform governmental functions" are not "public bodies." Jae v. Bd. of Educ. of Pelham Union Free School Dist., 22 A.D.3d 581, 584, 802 N.Y.S.2d 228 (2d Dep't 2005) (finding that Board of Education's committees were not public bodies); see also Perez, 5 N.Y.3d at 528 ("Certainly not all advisory bodies that issue recommendations to state agencies are performing governmental functions for purposes of compliance with the Open Meetings Law."); Matter of Poughkeepsie Newspaper Div. of Gannett Satellite Info. Network v. Mayor's Intergovernmental Task Force on N.Y. City Water Supply Needs, 145 A.D.2d 65, 67, 537 N.Y.S.2d 582 (2d Dep't 1989) (task force was "advisory body" and "not performing a governmental function"); Goodson Todman Enters., Ltd. v. Town Bd. of Milan, 151 A.D.2d 642, 643, 542 N.Y.S.2d 373, 374 (2d Dep't 1989) ("[i]t has

long been held that the mere giving of advice, even about governmental matters, is not itself a governmental function").

In Perez v. City University of New York, the New York Court of Appeals held that the Hostos Community College Senate and its Executive Committee were "exercising a quintessentially governmental function," and were therefore subject to the Open Meetings Law. Perez, 5 N.Y.3d at 529. The Court of Appeals noted that the College Senate (including its Executive Committee) had "been charged with a number of the responsibilities delegated by the Legislature to the CUNY Board," including "the power to formulate new policy recommendations and review existing policies" in "far-reaching" areas and the power to "initiate changes to the College Governance Charter." Id. The College Senate was to be "consulted prior to any additions or alterations to the College's divisions," and it was the "sole legislative body on campus authorized to send proposals to the CUNY Board of Trustees." Id. at 529-30. Considering all of the facts and circumstances, the Court of Appeals concluded that the College Senate's role was not only "advisory," but also "determinative." Id.

In contrast, 18 N.Y.C.R.R. § 341.1, which authorizes the NCDSS Advisory Council, explicitly states that members of the Council are to be involved in policy development "in an advisory capacity only." Similarly, the Council's Bylaws acknowledge that its purpose is to "act in an advisory capacity to the Commissioner of Social Services." Bylaws at II. There is nothing to suggest that the Income Supports Committee, which is a subcommittee of the larger Advisory Council, serves in anything more than an "advisory" capacity, either. The Bylaws do not delegate any powers to the Income Supports Committee. Bylaws at V(A)(2). Although plaintiff argues that the committee has recommended implementation of evening hours for NCDSS and created literature for public distribution, Pl. Opp. at 8, these acts are not inconsistent with the

type of work performed by a purely advisory body. There is no indication that the committee had any power to actually implement any of its recommendations.[6]

There is no indication from the pleadings that the committee performs a "governmental function"; on the contrary, the parties' submissions strongly suggest that it does not. Thus, there is no basis for concluding that the Income Supports Committee is a "public body" for purposes of the Open Meetings Law.[7] Accordingly, the Court finds that plaintiff has failed to adequately allege any violation of the New York Open Meetings Law.

### D. First Amendment Claims

Even if plaintiff had stated a claim of a violation of the Open Meetings Law, and he has not, "[v]iolations of state law that do not rise to the level of constitutional violations cannot form the basis of a federal claim under 42 U.S.C. § 1983." Berlickij v. Town of Castleton, 146 Fed. Appx., 533, 535 (2d Cir. Sept. 2, 2005). In other words, plaintiff cannot simply rest his First Amendment claim upon his argument that defendants violated New York's Open Meetings Law: he must also plead a constitutional claim.

In his first cause of action, plaintiff alleges that, by excluding him from the Income Supports Committee meetings, defendants violated his rights to free speech, freedom of association, freedom of assembly, and freedom to petition. Compl. at ¶¶ 75, 87-88. Plaintiff claims that he was banned from the meetings in order to "chill his right to freedom of expression

---

[6] Moreover, Freeman's advisory opinion, which is of course neither controlling nor dispositive, concludes only that the NCDSS Advisory Council, not the Income Supports Committee, is required to comply with the Open Meetings Law. Docket Entry No. 9-2 at Ex. B. It is noted that the "opinion" was, in any event, based upon plaintiff's inquiry, which stated the facts upon which the "opinion" was based.

[7] Moreover, plaintiff has not alleged that the Income Supports Committee has any quorum requirement, another essential element of a "public body." See Public Officers Law § 102(2).

and speech," and that his exclusion from the meetings was a "retaliatory act" for his exercise of free speech. Compl. at ¶¶ 77-78.

"As a general matter, 'the importance of the First Amendment guarantees to individual development and to our system of representative government' means 'that justifiable governmental goals may not be achieved by unduly broad means having an unnecessary impact' upon the rights guaranteed by the First Amendment." Zalaski v. City of Bridgeport Police Dept., 613 F.3d 336, 341 (2d Cir. 2010) (quoting Branzburg v. Hayes, 408 U.S. 665, 680-81, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Id. (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). Furthermore, "the government is permitted to exercise control over the public's use of government-owned property for expressive purposes, and the degree of control permitted depends upon the nature of the property and the speech restrictions imposed thereon." Hotel Emps. & Rest. Emps. Union Local 100 v. City of N.Y. Dep't of Parks & Rec., 311 F.3d 534, 544 (2d Cir. 2002). "[P]laintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right." Williams v. Town of Greenbergh, 535 F.3d 71, 78 (2d Cir. 2008) (citing Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)). To prove this deprivation, plaintiff must allege facts showing either that: "(1) defendants silenced him or (2) 'defendant[s'] actions had some actual, non-speculative chilling effect' on his speech. Williams, 535 F.3d at 78 (citing Colombo, 310 F.3d at 117).

Plaintiff argues that the Income Supports Committee meetings "[are] indeed, or should be" open to the public. Pl. Opp. at 6. The Court disagrees. In its Bylaws, the NCDSS Advisory Council unequivocally expressed that Income Supports Committee meetings would *not* be open

to public expression. See Bylaws at III(C) and V(A). "Plainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business." Madison Joint Sch. Dist v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 175 n. 8, 97 S.Ct. 421, 426 n. 8, 50 L.Ed.2d 376 (1976).[8] The Income Supports Committee need not open its meetings to members of the public, and it may conduct its business in private. See generally West Farms Associates v. State Traffic Comm'n of State of Conn., 951 F.2d 469, 473 (2d Cir. 1991) (State Traffic Commission "has no federal obligation to open all of its meetings to the public. On the contrary, it is plainly permitted by the First Amendment to conduct its business in private."); Berlickij, 146 Fed. Appx. at 534 (plaintiff had "no First Amendment right" to attend non-public sessions); see also Minn. State Bd. of Community Colleges v. Knight, 465 U.S. 271, 285, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984) ("Nothing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.").

"Freedom to speak on government property is largely dependent on the nature of the forum in which the speech is delivered." Bronx Household of Faith v. Community Sch. Dist. No. 10, 127 F.3d 207, 211 (2d Cir. 1997). "The Supreme Court has recognized three types of fora across a spectrum of constitutional protection for expressive activity." Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004). These consist of the "traditional" public forum, the "designated" public forum, including its subset, the "limited" public forum, and the "nonpublic" forum. Id. at 142-43. The nonpublic forum "is public property not traditionally open to public expression or intentionally designated by the government as a place

---

[8] The Court notes again the lack of evidence that the Income Supports Committee even qualifies as a "public body" or that it engages in any policymaking.

for such expression." Id. at 143. "[T]he State may reserve [a nonpublic forum] for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). In a nonpublic forum, government "may limit access . . . based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Byrne v. Rutledge, 623 F.3d 46, 54 (2d Cir. 2010) (internal quotation marks and citation omitted). The Income Supports Committee meetings, which are apparently held in the Nassau County Department of Social Services building, are nonpublic fora. See Berlickij, 146 Fed. Appx. at 534.[9]

The exclusion of plaintiff from the committee meetings was not unreasonable: his term had expired and he was no longer a member of the NCDSS Advisory Council. At most, plaintiff alleges that Commissioner Imhof declined to re-appoint him to the Advisory Council at some point after he had "ask[ed] questions based off of notes and minutes kept from a prior related meeting." Compl. at ¶ 54. These allegations are insufficient to reasonably conclude that he was excluded because of any particular viewpoint. In fact, since the committee was open *only* to

---

[9] Plaintiff claims that, in the past, the Income Supports Committee did not "check[] attendance against the Advisory Council member roster," and that non-members had attended Income Supports Committee meetings. See Docket Entry No. 18 at ¶¶ 9-10. Even assuming that committee members did not always enforce the rule that its meetings must be non-public, this does not change the Court's analysis. The meetings were not a traditional public forum because they have not "by long tradition or by government fiat . . . been devoted to assembly and debate." Perry, 460 U.S. at 45. Nor were the meetings a designated public forum, which can only be created by "purposeful governmental action." Arkansas Educ. Television Com'n v. Forbes, 523 U.S. 666, 677-78, 118 S.Ct. 1633, 1641-42, 140 L.Ed.2d 875 (1998); see also Daily v. N.Y. City Hous. Auth., 221 F.Supp.2d 390, 397 (E.D.N.Y. 2002). Plaintiff is not alleging that the meetings were open for public discourse by virtue of any "purposeful governmental action." At most, plaintiff suggests that non-members attended the meetings because the committee's own policy was not strictly enforced. See Forbes, 523 U.S. at 677 ("The government does not create a [designated] public forum by inaction . . . ."). Even if plaintiff alleged that the meetings were limited public fora, plaintiff may be excluded from such fora as long as the limitation is reasonable and viewpoint-neutral. See Children First Foundation v. Martinez, --- F.Supp.2d ----, 2011 WL 5451762, at *9 (N.D.N.Y. Nov. 8, 2011). As discussed below, plaintiff has failed to adequately allege that the restrictions were either unreasonable or that they discriminated against him on the basis of a particular viewpoint.

members of the Advisory Council, meaning plaintiff was denied access because of his status (i.e., as a non-member), rather than because of his views. See Perry, 460 U.S. at 49, 103 S.Ct. 948; see also DeGrassi v. City of Glendora, 207 F.3d 636, 646 (9th Cir. 2000). Nor has plaintiff adequately alleged a constitutional violation based upon his alleged exclusion from the Social Services Building. See Berlickij v. Town of Castleton, 327 F.Supp.2d 371, 384 (D. Vt. 2004), aff'd, 146 Fed. Appx. 533 (2d Cir. Sept. 2, 2005); see also Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 799-800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (government need not "grant access to all who wish to exercise their right to free speech on every type of [public] property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."). Moreover, it is not at all clear from the pleadings how plaintiff has been "silenced" by being unable to attend the committee meetings or that his exclusion had any "non-speculative" chilling effect on his speech.

Furthermore, plaintiff has not alleged any violation of his First Amendment right to petition. "The First Amendment right to petition the government for a redress of grievances, which is an assurance of a particular freedom of expression, is generally subject to the same constitutional analysis as the right to free speech." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993) (internal quotation marks and citations omitted). "The right to petition in general guarantees only that individuals have a right to communicate directly to government officials, and that individuals have the right of access to the courts to redress constitutional violations." Kittay v. Giuliani, 112 F.Supp.2d 342, 354 (S.D.N.Y. 2000) (citations omitted). "[C]ourts have recognized that government may conduct its business in private consistent with the First Amendment right to petition." Id. (citing West Farms, 951 F.2d at 473). As plaintiff has not alleged that his exclusion from the meetings prevented him from

communicating any grievance to elected officials, or that his access to the courts has been restricted, this element of the First Amendment claim is also dismissed. See id. The complaint also fails to state a claim for violations of plaintiff's rights to freedom of association or assembly, given the fact that the Income Supports Committee meetings are not public fora and are closed to non-members of the Advisory Council. See generally Hotel Employees, 311 F.3d at 546.

Plaintiff further alleges that government officials excluded him in retaliation for the exercise of free speech. In order to state such a claim, plaintiff "must allege that (i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (internal citations omitted). As discussed above, plaintiff does not have a First Amendment protected right to continue attending the Income Supports Committee meetings following the expiration of his appointment to the NCDSS Advisory Council, nor does he sufficiently allege that the exercise of his First Amendment rights were "chilled."

### E. Fourteenth Amendment Claim

Plaintiff further claims that defendants denied him his right to procedural due process by excluding him from the Income Supports Committee meetings. Compl. at ¶ 75.

"[T]he constitutional guarantee of procedural due process has always been understood to embody a presumptive requirement of notice and a meaningful opportunity to be heard *before* the State acts to deprive a person of his property." Mackey v. Montrym, 443 U.S. 1, 20 (1979) (emphasis in original). In adjudicating a procedural due process claim, a court must consider

"two distinct issues: 1) whether the plaintiffs possess a liberty or property interest protected by the Due Process clause; and, if so, 2) whether existing state procedures are constitutionally adequate." Kapps v. Wing, 404 F.3d 105, 112 (2d Cir. 2005). Plaintiff cites no authority for the proposition that he had a constitutionally-protected interest in attending the Income Supports Committee meetings, and the Court has found none. Furthermore, plaintiff has not demonstrated that a proceeding pursuant to Article 78 is a constitutionally inadequate state procedure. Plaintiff's Fourteenth Amendment claim is therefore dismissed.

F.  Remaining State Law Claims

As discussed above, the complaint does not allege any violation of the Open Meetings Law, and the complaint's second cause of action is therefore dismissed.

Insofar as plaintiff's third cause of action seeks to allege unlawful restrictions on his rights to freedom of expression, freedom of assembly, and freedom to petition, in violation of the New York State Constitution, Compl. at ¶¶ 103-110, plaintiff has failed to adequately plead such claims, and therefore this claim is dismissed. See Prince v. County of Nassau, --- F.Supp.2d ----, 2011 WL 4406338, at *30 (E.D.N.Y. Sept. 21, 2011) ("Plaintiff's claim under the New York State Constitution Article I, § 8 is dismissed for the same reasons as plaintiff's First Amendment retaliation claim described above–namely, plaintiff has failed to adequately plead such a claim."); see also Martinez v. Sanders, 307 Fed. Appx. 467, 468 n.2 (2d. Cir. Dec. 12, 2008) ("The State Constitution claims at issue here are subject to the same standards as the First Amendment claims.").[10]

---

[10] Even if any of plaintiff's state law claims were to survive, however, the Court would decline to exercise is supplemental jurisdiction. Baylis v. Marriott Corp., 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.")

G. Leave to Amend

Finally, plaintiff argues that he should be granted leave to amend the complaint if the Court dismisses any of his claims. This request is denied.

A party may amend a pleading once as a matter of course "within 21 days of serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.

It is well settled, however, that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed.2d 77 (1971) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962)). The Court may deny leave to amend for reasons such as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." Richard Greenshields Sec, Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (quoting State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).

Plaintiff fails to set forth any basis for the proposed amendments or to attach any proposed amended pleading. However, the Court finds that any amendment would be futile; as discussed above, the facts underlying this case simply do not support plaintiff's constitutional and state law claims. In other words, "[t]he problem with [plaintiff's] causes of action is substantive; better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of

-19-

course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Accordingly, plaintiff's application for leave to amend is denied.

III.     Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in all respects. The Clerk of Court is directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:      March 28, 2012
            Central Islip, New York